GILBERTO M. GARCIA,
Attorney At Law
25 East Spring Valley Avenue
Suite 330
Maywood, New Jersey 07607
Tel :  (201) 328-7042
Fax :  (201) 445-5855
gilberto13@me.com

*Attorney For Plaintiff*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

_____

JORGE DONES

       Plaintiff,

v.

                                                    Civil Action No.

CITY OF JERSEY CITY,
ANISIA CIALONE, individually and in     COMPLAINT AND JURY DEMAND
her official capacity.
       Defendants.

_____

**PRELIMINARY STATEMENT**

1. This is an action brought by the Plaintiff, Jorge Dones, against his employers, City of Jersey City ("Jersey City"), and his supervisor Anisia Cialone, the Director of Housing, Economic Development and Commerce ('HEDC"), individually, and in her official capacity.

2. Plaintiff seeks judgment in this Court against Defendants for relief permitted for the First Amendment Retaliatory Civil Rights Violations under 42 U.S.C. Section

1

1983 ("Section 1983") and under the Federal Constitution. Plaintiff also seeks damages for his whistleblower conduct under the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-3 et seq. ("CEPA").

## PARTIES

3. Plaintiff, Jorge Dones ("Plaintiff") is a resident of the State of New Jersey, residing in Passaic County, City of Paterson.

4. Plaintiff was at all relevant times herein an employee of HEDC, Division of Zoning for the municipality of Jersey City.

5. Defendant Jersey City is a municipal corporation of the State of New Jersey. There is a toxic environment of political contribution requests by superiors of the municipality that is condoned and promoted by the City of Jersey City notwithstanding the fact that it is prohibited. This type of conduct is employed by several political supporters of the Mayor, in this case, defendant Cialone. She is protected by the City of Jersey City due to its policy albeit silently and against all policies not permitting intimidation or harassing behavior to those who refuse to engage in political contributions or support of politicians in the exercise of their First Amendment rights.

6. Defendant Anisia Cialone is the Director of the Department of HEDC. She was appointed by Mayor Steven Fulop as a political appointment position and is being sued individually and in her official capacity. At all times relevant to the claims alleged herein, defendant Cialone served as the Director of the Department HEDC.

## JURISDICTION

1. This action arises under the First, Fifth and Fourteenth Amendments to the United States Constitution; under 42 U.S.C. Section 1983; and the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-3 et seq.

2. Jurisdiction is proper in this Court pursuant to 28 U.S.C. Section 1331, 1332, 1343(a)(3)(4). Plaintiff invokes the pendent jurisdiction of this Court to consider the claims arising under State law.

3. The amount in controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs.

4. Venue is proper pursuant to 28 U.S.C. Section 1391(b).

## FACTS COMMON TO ALL CAUSES OF ACTION

7. Plaintiff began working for Defendant Jersey City, on July 1, 1996.
8. Plaintiff was hired to work as Mayor's Aid for Bret Shundler, the Mayor at the time.
9. On or about July 1, 2008, Plaintiff was hired at HEDC.
10. HEDC is a licensing and permit department providing licenses and permits to constituents, contractors and developers who wish to develop or start a business in Jersey City.
11. Plaintiff is presently the office manager for the Division of Zoning under HEDC.

12. His job includes monitoring daily attendance of other employees in the office; meeting with developers and constituents applying for zoning review. The average day includes 20 meetings.

13. Plaintiff became the office manager on or about July, 2020. He was appointed by his immediate supervisor Nick Taylor. Defendant Cialone was upset that Plaintiff received the position because she did not want him to be a manager since he does not support the political campaign of the Mayor with financial contributions. Defendant Jersey City did not increase plaintiff's salary.

14. When the plaintiff became an office manager, defendant Cialone was already the department director. Upon the appointment of plaintiff, defendant Cialone, in September of 2020, made clear to him that he was now able to raise significant funds and gather substantial support for Mayor Fulop like he had done in the past for Mayor Bret Shundler.

15. Plaintiff advised defendant Cialone on more than one occasion that he was not interested in offering political patronage to Mayor Fulop.

16. Over time, defendant Cialone, whenever the opportunity arose, continued to make attempts to gather Plaintiff's support for the present administration. For example, even after the retaliatory treatment that Plaintiff suffered, in July of 2021, defendant Cialone sent the Plaintiff another bait. On July 22, 2021, Defendant Cialone sends an email to plaintiff encouraging him to seek a different position with the pretext that it would be good for him to move to the DPW Department. On the same day, plaintiff received an email with a contribution request from Mayor Fulop.

17. Most of the requests were for event attendance and political contributions. For example, there was a continuous request to donate money for a barbeque party supporting Mayor Fulop. This was in 2020.

18. At times, defendant Cialone attempted to require plaintiff to secure political contributions from constituents that would meet with plaintiff at his office. During all this time during December of 2019 and the beginning of 2020, the plaintiff continuously refused and even questioned whether that was appropriate whenever defendant Cialone would continue her requests.

19. As a result, defendant Cialone retaliated against the plaintiff. There were opportunities for promotions and salary increases, but defendant Cialone provided them only to employees who contributed to the political campaign of Mayor Fulop. This is an undisputed fact.

20. Defendant Cialone brought in her own team from the outside while failing to promote the workers in her department.

21. Brenda Martinez, the secretary to HCDC was a political contributor and received salary increase of 20%.

22. Sanjeevanee Vidwans, a deputy director who received more than a $20,000.00 a month after she was hired by Defendant Cialone, was also a political contributor.

23. Sheila Curtis, the secretary to the Planning Department, received a raise resulting for her political contributions.

24. Plaintiff was requested to engage in political contributions by defendant Cialone, but refused, and as a result was not considered for promotions.

25. Plaintiff exercised his First Amendment rights to not support the mayoral campaign of Mayor Fulop by refusing to get involved in political financial support for the campaign and made that clear to defendant Cialone and her team. While demonstrating enormous respect for the Mayor, the plaintiff chose not to contribute financially to his political campaign, and for that he was retaliated against by defendant Cialone.

26. On or about December 23, 2019, defendant Cialone hired Alex Dougherty to come in and review the plans for the zoning officer and to assist the zoning officer, Nick Taylor.

27. Plaintiff had been asked to go to Rutgers University to take courses and obtain the certificate of zoning officer to have a better opportunity to be promoted, but he was bypassed for this position after getting his certificate even though he was recommended for a promotion, which was denied by defendant Cialone.

28. Alex Dougherty was very close to defendant Cialone and was willing to coordinate requests for political contributions from plaintiff. That was in part, the reason he was hired and plaintiff was not promoted.

29. From the time he was hired, Alex Dougherty was constantly requesting financial contributions and political support from the plaintiff. Plaintiff refused and Alex Dougherty told him he needed to cooperate with contributions otherwise he would not be promoted despite working in Jersey City for such a long time.

30. Plaintiff continued to exercise his First Amendment rights and advised defendant Cialone, and Alex Dougherty when he came as defendant Cialone's de facto

      office assistant, that he would not contribute financially or participate in any political events.

31. Nevertheless, in early September 2020, Alex Dougherty again came up to plaintiff to discuss coming up with securing contributions. Plaintiff again declined and told Alex Dougherty he would not make any contributions.

32. As a result, there were continued attempts to gather support from plaintiff and insistence on the part of Alex Dougherty by maintaining patronage for Mayor Fulop with threats, coercion, and intimidation: you do not contribute then you do not get promoted. This was the retaliation mandated and designed by defendant Cialone.

33. Plaintiff experienced retaliatory conduct.

34. Alex Dougherty, during this time, would constantly come up to plaintiff and ask him to take sides, asking is plaintiff with Alex or was plaintiff with Mr. Nick Taylor. Plaintiff would not respond to these questions, further upsetting Alex.

35. By September, 2020, plaintiff had been completely disregarded for any promotions and his authority as office manager was significantly diminished by Alex Dougherty under the direction of Defendant Cialone.

36. Alex Dougherty's pattern of retaliation was vindictive and pervasive after he came in as an employee hired by Defendant Cialone and the plaintiff failed to acquiesce to his demands. This conduct was directed and strategized by defendant Cialone. This is part of the City of Jersey City and its quiet but toxic politization of the work environment with requests of political contributions.

While prohibited, if you do not use your check book for contributions, you are not part of the team and not only will not get ahead, your job in in peril.

37. On September 28, 2020, Plaintiff was talking to another employee, Henry Perez at around 8:30 A.M., when Alex Dougherty, who was at the office early, overheard the conversation plaintiff was having. He left the office at 8:45 AM and did not return until approximately 9:30 AM.

38. Plaintiff later learned that Alex Dougherty went upstairs to defendant Cialone's office.

39. Dougherty came back to plaintiff and stated, "Next time you have to say something about me, say it to my face, not behind my back, or is not going to end up well for you." Plaintiff replied, "Are you threatening me?" Alex Dougherty replied, "Take it as you want to take it" and stormed out of the office. Plaintiff advised his manager, Nick Taylor, but this was not the first time that Mr. Dougherty had used harassing and threatening behavior against plaintiff. Certainly, Dougherty had created a hostile work environment with his requests for contributions and his retaliatory and threatening conduct.

40. Plaintiff immediately reached out to HR and wrote a complaint against Dougherty for his threat.

41. After plaintiff called the director's office and spoke to the HR liaison, Deana Lantigua, and explained what had occurred, he requested to file a complaint against Mr. Dougherty. As a result, Alex Dougherty was terminated. This infuriated defendant Cialone who would start disciplinary proceedings and

retaliatory accusations against plaintiff for having filed a complaint against Dougherty, thus creating a hostile work environment in the office.

42. The retaliatory conduct directed by defendant Cialone included a complaint filed against plaintiff for allegedly creating a hostile working environment.  Not only was the plaintiff written up and disciplined merely for telling Mr. Dougherty to leave him alone, but he was charged with disciplinary conduct again, and suspended without pay for 5 days, all under the directive of defendant Cialone because plaintiff had done what was appropriate and acted as a whistleblower on Alex Dougherty's creation of a hostile work environment.  Defendant Cialone retaliated against the plaintiff for whistleblowing against defendant's friend and political associate.

43. After Dougherty got fired, pursuant to plaintiff's exercise of his First Amendment rights advising others that Dougherty's conduct was improper and discriminatory against the employees in the office, the retaliation by Cialone increased.

44. On November 5, 2020, Plaintiff was again charged with disciplinary conduct that was nothing but retaliatory conduct on the part of his director, defendant Cialone.

45. On May 5, 2021, Plaintiff was against retaliated upon by further unsupported disciplinary action.

46. Plaintiff was written up by defendant Cialone for allegedly not answering requests from constituents and/or ignoring their calls.

47. When plaintiff asked defendant about what constituents were complaining for him to be able to defend himself from the false allegations, defendant Cialone responded that the information was not available.

48. At this point, the plaintiff is extremely concerned that defendant Cialone, through her retaliatory conduct, is setting plaintiff up for a dismissal for plaintiff to be unable to collect the pension he has worked so hard for decades.

49. Plaintiff believes defendant Cialone is doing this to him to fire him before he is eligible for full retirement and medical benefits because if plaintiff is fired before that time, he would not be entitled to the retirement benefits offered by the City of Jersey City.

50. Plaintiff's constitutionally protected activities such as his right to freedom of speech refusing to provide financial contributions when requested by defendant Cialone and the filing of a formal complaint with HR about Mr. Dougherty harassing and intimidating conduct that created a hostile working environment in the zoning office, were the substantial and motivating factors for defendants' retaliatory conduct.

51. As a direct and proximate result of the defendants' illegal and wrongful actions, as described herein, plaintiff has suffered economic, non-economic and emotional distress damages, anxiety, physical illness, ridicule, public humiliation, indignity, loss of compensation, fringe and other benefits, the loss of earning power, loss of self- esteem, loss of standing in the community, physical injury, mental anguish, the loss of opportunities for prospective employment, incurring legal expenses and other expenses as a result of defendants actions.

## **COUNT ONE**

### **(Civil Rights Violations Under Section 1983 All Defendants)**

52. Plaintiff repeats and realleges each allegation contained above as even fully set forth herein.

53. The foregoing actions of defendants, acting under color of law, subjected plaintiff to the violation of his constitutional rights of freedom of speech, in violation of 42 USC section 1983, the 1st and 14 amendments of the United States Constitution by retaliating against him with threats by Dougherty on behalf of defendant Cialone and denial of promotions for refusing to contribute politically.

54. The plaintiff's constitutionally protected activities, as aforementioned, were the motivating factors for defendant Cialone's retaliatory conduct.

55. Defendant Cialone intentionally, willfully and recklessly retaliated against, harassed, and denied plaintiff's first amendment rights to freedom of speech to be able to refuse requests for political contributions.

56. Defendant Jersey City has created a system that permits this kind of conduct and condones it.

57. As a direct and proximate result of Defendants' illegal and wrongful actions, described herein, plaintiff suffered economic, noneconomic, and emotional distress damages, and social ridicule, public humiliation, indignity, loss of compensation, fringe and other benefits, loss of earning power, loss of self-esteem, loss of standing in the community, physical injury, mental anguish and concern that he may be fired and not receive his pension rights, is incurring legal expenses, and other expenses as a result of defendants' actions.

58. The foregoing actions were knowing, willful and deliberate violations of law and deprivation of Plaintiff's civil rights, and Plaintiff is therefore entitled to punitive damages under applicable law.

## COUNT TWO

**Retaliatory Conduct Based On CEPA, N.J.S.A. 34:19-1, et seq.**

59. Plaintiff repeats and realleges each allegation contained above as even fully set forth herein.

60. Plaintiff suffered damages because of defendant Cialone discriminatory actions, including emotional distress and the costs of bringing this action.

61. Defendant Cialone intentionally violated plaintiff's rights under CEPA, with malice or reckless indifference by creating a hostile work environment filing disciplinary proceedings against plaintiff in retaliation for plaintiff filing a complaint against Alex Dougherty, defendant Cialone's selected and preferred employee, and, as a result, are liable for punitive damages.

62. Plaintiff spoke out against and reported misconduct by Alex Dougherty a close ally to Defendant Cialone and was retaliated against.

63. Defendant Cialone retaliated against plaintiff by the conduct described above, which constitutes to date, and adverse employment action directly against plaintiff and therefore, Defendant Cialone's actions violate the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 *et seq*.

64. As a direct and proximate result of defendants' actions, Plaintiff has, and will in the future, suffer pain, emotional distress, humiliation, embarrassment, inconvenience, loss of pleasure and enjoyment of life, loss of reputation, lost wages, lost wage-earning capacity, loss of benefits and past and future medical expenses.

WHEREFORE, Plaintiff, Jorge Dones, respectfully requests this Honorable Court:

a. Enter a declaratory judgment that Defendants' unlawful conduct complained of herein violated and continues to violate plaintiff's rights as secured by the United States Constitution.

b. Enjoin defendants from continuing their unlawful conduct;

c. Award plaintiff compensatory damages including but not limited to plaintiff's economic, noneconomic, and emotional distress damages for anxiety, ridicule, public humiliation, indignity, loss of self-esteem, loss of standing in the community, physical injury, and mental anguish.

d. Award reasonable costs and attorneys' fees.

e. Award punitive damages, and

f. Grant any other relief this Court deems just and proper under the circumstances.

January 3, 2021

        /s/ Gilberto Garcia
_____
GILBERTO M. GARCIA, ATTORNEY
FOR JORGE DONES